Slip Op. 17-119

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **AGILENT TECHNOLOGIES,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Jennifer Choe-Groves, Judge** |
| **Defendant,** | **Court No. 16-00183** |
| **and** | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final scope ruling on Agilent Technologies, Inc.'s mass filter radiators]

Dated:  September 1, 2017

<u>George R. Tuttle, III</u>, Law Offices of George R. Tuttle, A.P.C., of Larkspur, CA, for Plaintiff Agilent Technologies, Inc.

<u>Aimee Lee</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Reginald T. Blades, Jr.</u>, Assistant Director.  Of counsel on the brief was <u>Jessica Rose DiPietro</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

<u>Alan H. Price</u> and <u>Robert E. DeFrancesco, III</u>, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenor Aluminum Extrusions Fair Trade Committee.

Choe-Groves, Judge: Plaintiff Agilent Technologies, Inc. ("Agilent" or "Plaintiff") is a

manufacturer of electronic and bio-analytical measurement instruments who brought this action

challenging the scope ruling on Agilent's mass filter radiator ("MFR") issued by the U.S.

Department of Commerce ("Department" or "Commerce").  See Summons, Sept. 14, 2016, ECF

No. 1; Compl., Oct. 5, 2016, ECF No. 8.  Commerce determined that the MFR is covered by the

scope of the antidumping and countervailing duty orders on aluminum extrusions from the

People's Republic of China ("China").  See Final Scope Ruling on Agilent Technologies, Inc.'s

Mass Filter Radiator, A-570-967 and C-570-968 (Aug. 10, 2016), available at

http://enforcement.trade.gov/download/prc-ae/scope/97-mass-filter-radiator-10aug16.pdf (last

visited Aug. 24, 2017) ("Final Scope Ruling").  See also Aluminum Extrusion from the People's

Republic of China, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty

order) ("Antidumping Duty Order") and Aluminum Extrusions from the People's Republic of

China, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order)

("Countervailing Duty Order") (collectively, "Orders").  Before the court is Plaintiff's Rule 56.2

motion for judgment on the agency record, in which Plaintiff argues that Commerce erred in

finding that Agilent's MFR is covered by the scope of the Orders.  See Pl.'s Rule 56.2 Mot. J.

Agency R., Mar. 31, 2017, ECF No. 23; Pl.'s Mem. P. & A. Supp. Mot. J. Agency R. 1–4, Mar.

31, 2017, ECF No. 23-1 ("Pl.'s Mot.").  The United States ("Defendant") and Defendant-

Intervenor Aluminum Extrusions Fair Trade Committee ("Defendant-Intervenor") oppose

Plaintiff's motion.  See Def.'s Resp. Pl.'s Rule 56.2 Mot. J. Agency R., June 5, 2017, ECF No.

24 ("Def.'s Resp."); Def.-Intervenor Aluminum Extrusions Fair Trade Committee's Resp. Br.,

June 5, 2017, ECF No. 25.  For the reasons set forth below, the court remands Commerce's

scope ruling.

## BACKGROUND

Commerce issued two Orders on aluminum extrusions from China on May 26, 2011.  See

Antidumping Duty Order, 76 Fed. Reg. at 30,650; Countervailing Duty Order, 76 Fed. Reg. at

30,653.  Both Orders have identical scope language, which provide the following description of

subject merchandise:

> The merchandise covered by this order is aluminum extrusions which are shapes
> and forms, produced by an extrusion process, made from aluminum alloys having
> metallic elements corresponding to the alloy series designations published by The
> Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary
> equivalents or other certifying body equivalents).

Antidumping Duty Order, 76 Fed. Reg. at 30,650; Countervailing Duty Order, 76 Fed. Reg. at

30,653.  The Orders explicitly exclude "finished merchandise"[1] and "finished heat sinks."[2]  See

Antidumping Duty Order, 76 Fed. Reg. at 30,651; Countervailing Duty Order, 76 Fed. Reg. at

30,654.

On November 20, 2014, Plaintiff submitted a scope ruling request seeking confirmation

from Commerce that the MFR is outside the scope of the Orders.  See Scope Inquiry on Certain

---

[1] Finished merchandise are goods "containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." Antidumping Duty Order, 76 Fed. Reg. at 30,651; Countervailing Duty Order, 76 Fed. Reg. at 30,654.

[2] Finished heat sinks are "fabricated heat sinks made from aluminum extrusions the design and production of which are organized around meeting certain specified thermal performance requirements and which have been fully, albeit not necessarily individually, tested to comply with such requirements."  Antidumping Duty Order, 76 Fed. Reg. at 30,651; Countervailing Duty Order, 76 Fed. Reg. at 30,654.

Finished Aluminum Components from the People's Republic of China: Mass Filter Radiator, PD

1, bar code 3245192-01, CD 1, bar code 3245188-01 (Nov. 20, 2014) ("Agilent's Scope Ruling

Request").[3]  Agilent describes its product as a machined aluminum component, which is plated

with a proprietary material to provide specific levels of thermal resistance and is designed and

fabricated for use in Agilent's mass spectrometer.  See id. at 2–5.  The MFR houses the central

components of the mass spectrometer and, according to Agilent, plays an important role in

transferring heat from critical components.  See id.  Agilent asserted that its MFR should be

excluded from the scope of the Orders on the basis that: (1) the MFR is within the finished

merchandise exclusion because it is a finished product comprised exclusively of aluminum

extrusions; and (2) the MFR is within the finished heat sink exclusion because it was designed

precisely to have specific thermal resistance properties to remove damaging heat from electronic

equipment and the MFR has been tested around meeting certain thermal requirements.  See

Agilent's Scope Ruling Request at 5–12.

        After receiving Agilent's Scope Ruling Request, Commerce sent Agilent supplemental

questionnaires requesting information on the MFR's production process, thermal resistance

properties, performance requirements, and testing procedures used to ensure compliance with

those requirements.  See Aluminum Extrusions from the People's Republic of China: Mass Filter

Radiators, PD 6, bar code 3259038-01 (Feb. 10, 2015) (supplemental questionnaire); Scope

---

[3] The Final Scope Ruling involves both the Antidumping Duty Order and the Countervailing
Duty order on aluminum extrusions from China.  Commerce compiled two virtually identical
administrative records for this proceeding.  The Parties provided the court with a joint appendix
containing documentation from the administrative record relating to the Antidumping Duty
Order.  Unless otherwise noted, all citations to the administrative record will refer to the index
for the Antidumping Duty Order.

Inquiry on Agilent's Mass Filter Radiator, PD 24, bar code 3433012-01 (Jan. 15, 2016)

(supplemental questionnaire); Scope Inquiry on Agilent's Mass Filter Radiator, PD 31, bar

code 3457413-01 (Apr. 8, 2016) (supplemental questionnaire).[4]  Plaintiff responded to Commerce's

questionnaires and claimed that the "primary function of the MFR is to transfer heat from the

heat source to the quadrupole."  Agilent Technologies: Scope Request (Mass Filter Radiator) at

2, PD 39, bar code 3523198-01 (Mar. 23, 2015) (response to questionnaire) ("Mar. 23

Response").  See also Scope Inquiry on Agilent's Mass Filter Radiator, PD 28, bar code

3446604-01, CD 6, bar code 3440873-01 (Feb. 10, 2016) (supplemental questionnaire response)

("Feb. 10 Response"); Scope Inquiry on Agilent's Mass Filter Radiator, PD 29, bar code

3468739-01 (May 13, 2016) (April 8 – request for information response) ("May 13 Response").

Agilent also provided a declaration from its Research and Development Project Manager to

support the assertion that the MFR acts as a finished heat sink.  See Feb. 10 Response at

Attach. 7 ("R&D Declaration").  The R&D Declaration explained the details regarding the heat

transfer properties of the MFR, which included certain material specifications, required

temperature changes, and thermal resistance parameters.  See id.

Commerce issued its Final Scope Ruling on August 10, 2016, finding that the MFR is

within the scope of the Orders and did not qualify for either of the two exclusions proposed by

Agilent.  See Final Scope Ruling at 17–23.  With respect to the finished merchandise exclusion,

Commerce found that the MFR does not contain non-extruded aluminum parts, is processed in a

manner consistent with the scope of the Orders, and fits within the physical description of an

---

[4] The citation to Scope Inquiry on Agilent's Mass Filter Radiator, PD 31, bar code 3457413-01 (Apr. 8, 2016) (supplemental questionnaire) is to the administrative index for the Countervailing Duty Order.

aluminum extrusion product covered by the Orders.  See id. at 17–21.  With respect to the

finished heat sink exclusion, Commerce concluded that Agilent failed to establish with evidence

on the record that the MFR was designed "around meeting specific thermal performance

requirements" and was sufficiently "tested to meet such specific thermal performance

requirements."  Id. at 21.

        Plaintiff commenced this action on September 14, 2016.  See Summons.  Plaintiff filed

its Rule 56.2 motion on March 31, 2017, asserting that Commerce's Final Scope Ruling was

unsupported by substantial evidence.  See Pl.'s Mot. 24.  Defendant argues that the Final Scope

Ruling should be affirmed because it is supported by substantial evidence and is in accordance

with the law.  See Def.'s Resp. 26.

## JURISDICTION AND STANDARD OF REVIEW

        The court has jurisdiction to review Commerce's scope determination.  See 28 U.S.C.

§ 1581(c) (2012);[5] Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended 19 U.S.C.

§ 1516a(b)(1)(B)(i) (2015).[6]  The court must set aside "any determination, finding, or conclusion

found . . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  See also NMB Singapore Ltd. v. United

States, 557 F.3d 1316, 1319 (Fed. Cir. 2009); NSK Ltd. v. United States, 510 F.3d 1375, 1379

(Fed. Cir. 2007).  "Substantial evidence . . . means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  A.L. Patterson, Inc. v. United States, 585

---

[5] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

[6] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title
19 of the U.S. Code, 2015 edition.

Fed. Appx. 778, 781–82 (Fed. Cir. 2014) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305

U.S. 197, 229 (1938)).

## DISCUSSION

Plaintiff alleges that the Final Scope Ruling was unsupported by substantial evidence.

See Pl.'s Mot. 14–20.  Plaintiff argues that detailed information provided in its application and

subsequent filings, including the R&D Declaration, establish that its MFR is a finished heat sink

excluded from the scope of the Orders.  See id. at 15–16.  Defendant counters that Commerce's

determination was supported by substantial evidence because the record demonstrates that the

MFR does not qualify for the finished heat sink exclusion.[7]  See Def.'s Resp. 14–25.

The scope of an antidumping or countervailing duty order may need clarification at times

"because the descriptions of subject merchandise contained in the Department's determinations

must be written in general terms." 19 C.F.R. § 351.225(a) (2013).[8]  Antidumping and

---

[7] Defendant argues that Agilent did not demonstrate that the MFR was "organized around
meeting specified thermal performance requirements" because the record evidence indicates that
the MFR is a Faraday cage rather than a heat sink.  See Def.'s Resp. 14–22.  Defendant alleges
that Agilent failed to show that the MFR has been "fully, but not necessarily individually, tested
to meet those specified thermal performance requirements" because the record evidence does not
demonstrate that the MFR was actually tested to meet certain thermal requirements and the
original testing data was not available.  See id. at 22–25.

[8] To clarify the scope of an order, Commerce's regulations authorize the agency to interpret an
antidumping or countervailing duty order and issue scope rulings that address whether particular
products are covered by the scope.  See 19 C.F.R. § 351.225(a).  In determining whether a
particular product is included within the scope of an antidumping or countervailing duty order,
Commerce must follow an interpretative framework provided by 19 C.F.R. § 351.225.  If an
interested party submits an application requesting Commerce to clarify whether the scope of an
order covers particular merchandise, Commerce must either issue a final scope ruling pursuant to
19 C.F.R. 351.225(d) or formally initiate a scope inquiry pursuant to 19 C.F.R. § 351.225(e)
within forty-five days after receiving the application for a scope ruling.  19 C.F.R.
§ 351.225(c)(2).  Commerce may refrain from conducting an inquiry and issue a final scope

(footnote continued)

countervailing duty orders "may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1089 (Fed. Cir. 2002).  Generally, Commerce "enjoys substantial freedom to interpret and clarify its antidumping orders." Duferco, 296 F.3d at 1096 (quoting Novosteel SA v. United States, 284 F.3d 1261, 1269 (Fed. Cir 2002)).  If the Department fails "to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion[,] [the Department's determination is] unsupported by substantial evidence." Ceramark Tech., Inc. v. United States, 38 CIT __, __, 11 F. Supp. 3d 1317, 1323 (2014) (quoting Allegheny Ludlum Corp. v. United States, 24 C.I.T. 452, 479, 112 F. Supp. 2d 1141, 1165 (2000)).  Although Commerce's "explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court." NMB Singapore, 557 F.3d at 1319–20 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

Commerce's Final Scope Ruling found that the MFR is included within the scope of the Orders pursuant to 19 CFR 351.225(d) and (k)(1). See Final Scope Ruling at 23.  In determining whether certain merchandise is included within the scope of an antidumping or countervailing duty order, Commerce must first look to the plain language of the Order.  See Duferco Steel, 296 F.3d at 1097.  The scope of the Orders includes "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements

---

ruling if it can determine whether a product is included or excluded from the scope of an order based solely upon the application for a scope ruling and the descriptions of subject merchandise contained in the petition, the underlying investigation, and determinations made by Commerce and the U.S. International Trade Commission. See 19 C.F.R. § 351.225(d), (k)(1).

corresponding to the alloy series designations published by The Aluminum Association

commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body

equivalents)."  Antidumping Duty Order, 76 Fed. Reg. at 30,651; Countervailing Duty Order, 76

Fed. Reg. at 30,654.  Agilent's MFR is created by machining and plating a single piece extruded

aluminum tube.  See Agilent's Scope Ruling Request at 3.  The Department determined based on

Agilent's Scope Ruling Request that Agilent's MFR is covered by the plain language of the

Orders.  See Final Scope Ruling at 17.  Commerce found that unless otherwise excluded as

"finished merchandise" or a "finished heat sink," the MFR is covered by the scope of the Orders.

See id.

Commerce's Final Scope Ruling analyzed the language of the exclusions to determine

whether the MFR was expressly excluded from the scope of the Orders.  See Final Scope Ruling

at 17-23.  Commerce determined first that the MFR was not excluded from the Orders under the

"finished merchandise" exclusion.[9]  See id. at 17–21.  The Department then turned to the

"finished heat sink" exclusion and explained as follows:

> The exclusion for heat sinks describes a specific category of excluded "finished
> heat sinks," which meet the following requirements: (1) the design and production
> of the product must be "organized around meeting specified thermal performance
> requirements;" and, (2) the product must be "fully, but not necessarily
> individually, tested to meet those specified thermal performance requirements."

---

[9] To qualify for the "finished merchandise" exclusion, the "merchandise must contain aluminum
extrusions 'as parts' and be 'fully and permanently assembled.'"  IKEA Supply AG v. United
States, 40 CIT __, __, 180 F. Supp. 3d 1202, 1206 (2016).  Commerce explained in its Final
Scope Ruling that in order to qualify for the finished merchandise exclusion, "the product must
contain both aluminum extrusions as parts, as well as some component besides aluminum
extrusions."  Final Scope Ruling at 18.  Commerce concluded that "because Agilent's MFR is
composed entirely of aluminum extrusions, it is not excluded from the scope of the order under
the 'finished merchandise' exclusion."  Id.  Plaintiff has not challenged the finished merchandise
exclusion in the instant action before the court.  See Pl.'s Mot. 1–24.

> Agilent does not provide compelling evidence that the "design and production" of its MFR is "organized around meeting specified thermal performance requirements." Agilent identified specific surface finish, flatness, perpendicularity, and locational tolerances for its MFR. However, as explained in ECCO LED Light Bars Scope Ruling, such requirements are not in and of themselves "specified thermal performance requirements," around which the design and production of the product is organized. Agilent also provides certain thermal performance metrics under which the MFR is tested. However, Agilent has not demonstrated that the "design and production" of its MFR was "organized around meeting any specified thermal performance requirements," or that such thermal performance specifications existed at that time. We noted that the design of the MFR was reportedly developed several years ago, but that Agilent's R&D Declaration is a May 2015 document. Agilent's R&D Declaration further explains: "[a]lthough minor revisions have been made in recent years the thermal design has not changed since it was developed [ . . . ] over 15 years ago." For these reasons, it is also not possible for the MFR to be "fully, but not necessarily individually, tested to meet such specified thermal performance requirements, as required by the scope of the Orders."

Id. at 22. Accordingly, Commence concluded that "Agilent's MFR is not a 'finished heat sink'"

and "is therefore subject to the scope of the Orders." Id. at 23.

Although Commerce has broad discretion when it interprets the scope of an antidumping

or countervailing duty order, Commerce's determinations must be supported by substantial

evidence. See Duferco, 296 F.3d at 1096; Eckstrom Indus., Inc. v. United States, 254 F.3d 1068,

1072 (Fed. Cir. 2001). Defendant argues that Commerce explained adequately how the record

supported the conclusion that the MFR failed to meet the requirements of the finished heat sink

exclusion. See Def. Resp. 14–25. Commerce's entire analysis of the record evidence was

contained, however, in a single conclusory paragraph. See Final Scope Ruling at 22.

Commerce's cursory explanation failed to address the considerable amount of record evidence

submitted by Agilent to show that the MFR was designed and tested around specific thermal

performance requirements.[10]  See, e.g., Agilent's Scope Ruling Request; Mar. 23 Response;

Post-Meeting Submission of Slide Presentation, PD 12, bar code 3272219-01 (Apr. 24, 2015);

Response to Comments by the Aluminum Extrusions Fair Trade Committee That Agilent

Technologies' Mass Filter Radiator Is Not Excluded from the Antidumping and Countervailing

Duty Orders on Aluminum Extrusions from the People's Republic of China, PD 15, bar code

3278725-01 (May 22, 2015); Feb. 10 Response; May 13 Response; R&D Declaration.

        The court finds that Commerce's scope ruling did not adequately discuss the record

evidence submitted in support of Agilent's position, including the R&D Declaration and

questionnaire responses.  Commerce noted merely that "surface finish, flatness, perpendicularity,

and locational tolerances" were "not in and of themselves 'specified thermal performance

requirements,' around which the design and production of the product is organized."  Final

Scope Ruling at 22.  Commerce did not explain why the description of thermal performance

requirements contained in Agilent's submissions, including the explanations in the R&D

Declaration, were insufficient to satisfy the thermal performance test of the exclusion.

Commerce did not consider Agilent's R&D Declaration because it was prepared in 2015, while

the MFR product was designed fifteen years earlier.  Apparently Commerce disregarded the

information in the R&D Declaration because the document was not created contemporaneously

with the development of the MFR.  See id.  The Department failed to cite any relevant authority

to support its position that the information contained in a recently created document was

inadequate or inherently unreliable.  The court is not convinced that it was reasonable for

---

[10] Specifically, Agilent submitted its scope ruling request, an initial questionnaire response, the
slides from a presentation to Commerce, responses to Petitioner's comments, two supplemental
questionnaire responses, and the R&D Declaration regarding the design of the MFR.

Commerce to ignore a sworn declaration merely because it was written years after the product was designed.  Presumably the declarant was informed of the MFR's original design, production, specific thermal performance requirements, testing requirements, and other relevant information. Commerce also did not sufficiently address the other information provided by Agilent, including its scope ruling request, questionnaire response, presentation slides, responses to Petitioner's comments, and two supplemental questionnaire responses.  Commerce did not adequately discuss the record evidence that, on its face, provided support for Agilent's position.  See Ceramark Tech., Inc., 38 CIT at __, 11 F. Supp. 3d at 1323.

The court finds that Commerce's explanation regarding why the MFR does not qualify for the finished heat sink exclusion is unsupported by substantial evidence.  This matter is remanded for Commerce to consider the record evidence, including the R&D Declaration, and to provide a reasonable explanation regarding whether Agilent's MFR is a finished heat sink excluded from the scope of the Orders.

## <u>CONCLUSION</u>

For the reasons set forth above, the court holds that Commerce's scope determination is not supported by substantial evidence. Therefore, in accordance with the foregoing, it is hereby

**ORDERED** that Commerce's scope determination regarding Agilent's mass filter radiator is remanded for Commerce to fully address the evidence on the record relating to the applicability of the finished heat sink exclusion; and it is further

**ORDERED** that Commerce shall file its remand determination on or before November 1, 2017; and it is further

**ORDERED** that the Parties shall file any comments on the remand determination on or before December 1, 2017; and it is further

**ORDERED** that the Parties shall file any replies to the comments on or before December 15, 2017.

/s/ Jennifer Choe-Groves
 Jennifer Choe-Groves, Judge

Dated:  September 1, 2017
       New York, New York