Slip Op. 18- 131

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AGILENT TECHNOLOGIES,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>and<br><br>ALUMINUM EXTRUSIONS FAIR<br>TRADE COMMITTEE,<br><br>          Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 16-00183 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's redetermination on remand scope ruling on Agilent Technologies' mass filter radiator.]

Dated:  October 1, 2018

George R. Tuttle, III, Law Offices of George R. Tuttle, A.P.C., of Larkspur, CA, and Melanie A Frank, The Global Trade Group, PLLC, of Arlington, VA, for Plaintiff Agilent Technologies.

Aimee Lee, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of counsel on the brief was Jessica R. DiPietro, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Alan H. Price, Derick G. Holt, and Robert E. DeFrancesco, III, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenor Aluminum Extrusions Fair Trade Committee.  Laura El-Sabaawi also appeared.

Choe-Groves, Judge:  Plaintiff Agilent Technologies ("Agilent"), a manufacturer of

electronic and bio-analytical measurement instruments, challenges a scope ruling on Agilent's

mass filter radiator issued by the U.S. Department of Commerce ("Department" or

"Commerce").  Before the court are the results of redetermination on remand filed by Commerce

pursuant to the court's prior opinion, Agilent Techs. v. United States, 41 CIT __, 256 F. Supp. 3d

1338 (2017) ("Agilent I").  See Results Redetermination Pursuant Court Remand, Dec. 15, 2017,

ECF No. 40-1 ("Remand Results").

In its initial scope ruling, Commerce determined that the mass filter radiator is covered

by the scope of the antidumping and countervailing duty orders (collectively, "Orders") on

aluminum extrusions from the People's Republic of China ("China").  See Final Scope Ruling on

Agilent Technologies, Inc.'s Mass Filter Radiator, A-570-967 and C-570-968, (Aug. 10, 2016),

available at http://enforcement.trade.gov/download/prc-ae/scope/97-mass-filter-radiator-

10aug16.pdf (last visited Sept. 26, 2018) ("Final Scope Ruling"); see also Aluminum Extrusions

from the People's Republic of China, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011)

(antidumping duty order) ("Antidumping Duty Order"); Aluminum Extrusions from the People's

Republic of China, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty

order) ("Countervailing Duty Order").  Plaintiff filed a Rule 56.2 motion for judgment on the

agency record, and the court remanded Commerce's Final Scope Ruling with instructions for

Commerce to fully address the evidence on the record relating to the applicability of the finished

heat sink exclusion.  See Agilent I, 41 CIT at __, 256 F. Supp. 3d at 1345.  Commerce issued its

Results of Redetermination Pursuant to Court Remand on December 15, 2017.  See Remand

Results.  Agilent contests the Remand Results.  See Pl.'s Comments Def.'s Redetermination

Remand, Jan. 16, 2018, ECF No. 42 ("Pl.'s Comments").  Defendant United States

("Government") and Defendant-Intervenor Aluminum Extrusions Fair Trade Committee support

Commerce's Remand Results.  See Def.'s Resp. Comments Department Commerce's Remand

Results, Jan. 29, 2018, ECF No. 43 ("Def.'s Comments"); Def.-Intervenor Aluminum Extrusions

Fair Trade Committee's Reply Comments Final Results Redetermination Pursuant Ct. Remand,

Jan. 30, 2018, ECF No. 46 ("Def.-Intervenor's Comments").

## ISSUE PRESENTED

The court considers whether Commerce's scope redetermination on remand regarding

Plaintiff's mass filter radiator is supported by substantial evidence.

For the reasons set forth below, the court concludes that Commerce's redetermination

results are not supported by substantial evidence and remands this matter for further proceedings

consistent with this opinion.

## BACKGROUND

The court presumes familiarity with the facts of this case.  See Agilent I, 41 CIT at __,

256 F. Supp. 3d at 1340–41.  Commerce issued two Orders on aluminum extrusions from China

on May 26, 2011.  See Antidumping Duty Order, 76 Fed. Reg. at 30,650; Countervailing Duty

Order, 76 Fed. Reg. at 30,653.  Both Orders have identical scope language, which provide the

following description of the subject merchandise:

> The merchandise covered by this order is aluminum extrusions which are shapes
> and forms, produced by an extrusion process, made from aluminum alloys having
> metallic elements corresponding to the alloy series designations published by The
> Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary
> equivalents or other certifying body equivalents).

Antidumping Duty Order, 76 Fed. Reg. at 30,650; Countervailing Duty Order, 76 Fed. Reg. at

30,653.

The Orders explicitly exclude "finished heat sinks."  See Antidumping Duty Order, 76

Fed. Reg. at 30,651; Countervailing Duty Order, 76 Fed. Reg. at 30,654.  "Finished heat sinks"

are defined as follows:

> Finished heat sinks are fabricated heat sinks made from aluminum
> extrusions the design and production of which are organized around
> meeting certain specified thermal performance requirements and which
> have been fully, albeit not necessarily individually, tested to comply with
> such requirements.

Antidumping Duty Order, 76 Fed. Reg. at 30,651; Countervailing Duty Order, 76 Fed. Reg. at

30,654.

Plaintiff manufactures a mass filter radiator, which houses the central components of a

mass spectrometer and plays an important role in transferring heat from critical components.  See

Scope Inquiry on Certain Finished Aluminum Components from the People's Republic of China

(Case Nos. A-570-967 and C-570-968): Mass Filter Radiator at 5, PD 1, bar code 3245192-01

(Dec. 3, 2014) ("Agilent's Scope Ruling Request").  Agilent asserts that its mass filter radiator

should be excluded from the scope of the Orders because it is a finished heat sink designed,

produced, and tested to meet specified thermal resistance properties to remove damaging heat

from electronic equipment.  See id. at 5–12.

The court remanded the Final Scope Ruling after determining that Commerce failed to

consider certain record evidence in support of Agilent's position that the mass filter radiator is

covered by the finished heat sink exclusion.  Agilent I, 41 CIT at __, 256 F. Supp. 3d at 1345.

The court instructed Commerce to consider Agilent's R&D Declaration, scope ruling request,

questionnaire response, presentation slides, responses to Petitioner's comments, and two

supplemental questionnaire responses.  Id.

On December 15, 2017, Commerce issued its Remand Results, finding that Agilent's

mass filter radiator is covered by the scope of the Orders and does not qualify for the finished

heat sink exclusion.  See Remand Results 2.  Agilent submitted comments to the court arguing

that the Remand Results were not supported by substantial evidence on the record and were

contrary to the law.  See Pl.'s Comments 6.  Defendant argues that Commerce was reasonable in

determining that the mass filter radiator does not meet the finished heat sink exclusion.  See

Def.'s Comments 28.  The court held oral argument on June 5, 2018.  See Oral Argument, Jun. 5,

2018, ECF No. 53.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction to review Commerce's scope determination pursuant to 28

U.S.C. § 1581(c) (2012).  Commerce's final scope determination will be upheld unless it is

unsupported by substantial evidence on the record, or otherwise not in accordance with the law.

19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

In determining whether a product is within scope of the Orders, "the scope of a final

order may be clarified, [but] it can not be changed in a way contrary to its terms."  Duferco Steel,

Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (quoting Smith Corona Corp. v.

United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).  Because the descriptions of subject

merchandise contained in Commerce's determinations must be written in general terms, it is

often difficult to determine whether a particular product is included within the scope of an

antidumping or countervailing duty order.  See 19 C.F.R. § 351.225(a) (2016); Duferco Steel,

296 F.3d at 1096.

Antidumping and countervailing duty orders "may be interpreted as including subject

merchandise only if they contain language that specifically includes the subject merchandise or

may be reasonably interpreted to include it."  Duferco Steel, 296 F.3d at 1089.  Generally,

Commerce "enjoys substantial freedom to interpret and clarify its antidumping orders."  Id.

(quoting Novosteel SA v. United States, 284 F.3d 1261, 1269 (Fed. Cir 2002)).  Commerce is

given "substantial deference" to interpret its own antidumping duty and countervailing duty

orders.  King Supply Co. v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012).  If the

Department fails "to consider or discuss record evidence which, on its face, provides significant

support for an alternative conclusion[,] [the Department's determination is] unsupported by

substantial evidence."  Ceramark Tech., Inc. v. United States, 38 CIT __, __, 11 F. Supp. 3d

1317, 1323 (2014) (quoting Allegheny Ludlum Corp. v. United States, 24 C.I.T. 452, 479, 112 F.

Supp. 2d 1141, 1165 (2000)).  Although Commerce's "explanations do not have to be perfect,

the path of Commerce's decision must be reasonably discernable to a reviewing court."  NMB

Singapore Ltd. v. United States, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009) (citing Motor Vehicle

Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

Agilent argues that Commerce's Remand Results are unsupported by substantial evidence

and are contrary to the law.  See Pl.'s Comments 6.  Plaintiff argues that the mass filter radiator

meets all of the criteria identified by Commerce to qualify as a finished heat sink and should be

excluded from the scope of the Orders.  See id. at 25–28.  The Government counters that

Commerce's determination is supported by substantial evidence because the record demonstrates

that the mass filter radiator does not qualify for the finished heat sink exclusion.  See Def.'s

Comments 11–24.  Commerce focuses on its assertion that Agilent's mass filter radiator does not

meet the definition of a finished heat sink because it was not designed and produced to meet

specified thermal performance requirements and was not tested for compliance with specified

design requirements.  See id.

        When interpreting the antidumping duty order's scope, Commerce first examines the

scope of the Order to determine if that language "is ambiguous and open to interpretation."

Kirovo-Chepetsky Khimichesky Kombinat, JSC v. United States, 39 CIT __, __, 58 F. Supp. 3d

1397, 1402 (2015) (citing Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1302 (Fed.

Cir. 2013)); see also Duferco Steel, 296 F.3d at 1097 ("[A] predicate for the interpretative

process is language in the order that is subject to interpretation.").  If Commerce finds that scope

language is subject to interpretation, Commerce may turn to the (k)(1) factors, i.e., "[t]he

descriptions of the merchandise contained in the petition, the initial investigation, and the

determinations of [Commerce] (including prior scope determinations) and the [U.S. International

Trade] Commission" for clarification.  19 C.F.R. § 351.225(k)(1); see also Tak Fat Trading Co.

v. United States, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  While these (k)(1) sources may provide

valuable guidance as to the interpretation of the final order, "they cannot substitute for language

in the order itself."  Duferco Steel, 296 F.3d at 1097.

        Pursuant to its regulation, if Commerce is able to interpret the scope of the Order after

examination of the (k)(1) factors—that is, if Commerce finds that the (k)(1) factors are

dispositive—then its inquiry ends, and Commerce will issue a final scope ruling regarding

whether the subject merchandise is covered by the Order.  See 19 C.F.R. § 351.225(d).  For a

(k)(1) determination "to be dispositive, the permissible sources examined by Commerce 'must be

controlling of the scope inquiry in the sense that they *definitely answer* the scope question.'"

OTR Wheel Eng'g, Inc. v. United States, 36 CIT __, __, 853 F. Supp. 2d 1281, 1287–88 (2012)

(quoting Sango Int'l L.P. v. United States, 484 F.3d 1371, 1379 (Fed. Cir. 2007)) (emphasis

added).  Should Commerce find that the (k)(1) factors are not dispositive, however, it must

further consider the (1) "physical characteristics of the product"; (2) "expectations of the

ultimate purchasers"; (3) "ultimate use of the product"; (4) "channels of trade in which the

product is sold"; and (5) "manner in which the product is advertised and displayed" (i.e., the

(k)(2) factors).  19 C.F.R. § 351.225(k)(2).  Where a scope determination is challenged, the

Court's purpose is to determine whether the scope of the Order "contain[s] language that

specifically includes the subject merchandise or may be reasonably interpreted to include it."

Duferco Steel, 296 F.3d at 1089.

Commerce's Final Scope Ruling found that the mass filter radiator was covered by the

scope of the Orders.  Remand Results 9.  Commerce determined that the mass filter radiator

"consisted entirely of a single piece of extruded aluminum which is further processed, including

being [computerized numerical control] machined and plated with a proprietary material, in a

manner consistent with the scope of the *Orders*."  Id.  Commerce continued to find that the mass

filter radiator does not meet the requirements of the heat sink exclusion.  Id. at 49–50.

To determine whether Plaintiff's product is included within the scope of the Order,

Commerce first looks to the plain language of the Order.  The scope of the Orders includes

"aluminum extrusions which are shapes and forms, produced by an extrusion process, made from

aluminum alloys having metallic elements corresponding to the alloy series designations

published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or

proprietary equivalents or other certifying body equivalents)."  <u>Antidumping Duty Order</u>, 76

Fed. Reg. at 30,651; <u>Countervailing Duty Order</u>, 76 Fed. Reg. at 30,654.  Agilent's mass filter

radiator is created by machining and plating a single piece extruded aluminum tube.  <u>See</u>

Agilent's Scope Ruling Request at 3.  Based on Agilent's Scope Ruling Request, Commerce

determined that Agilent's mass filter radiator is covered by the plain language of the Orders.  <u>See</u>

Final Scope Ruling at 17.  Commerce concluded that unless otherwise excluded as "finished

merchandise" or a "finished heat sink," the mass filter radiator is covered by the scope of the

Orders.  <u>See</u> <u>id.</u>

Commerce continued its analysis by examining the exclusion language for "finished heat

sink" to determine whether the mass filter radiator was expressly excluded from the scope of the

Orders.  <u>See</u> <u>Remand Results</u> 11.  In the Remand Results, Commerce identified five

requirements that must be present for a product to qualify for the "finished heat sink" exclusion:

> 1) the product must be a "fabricated heat sink{} made from aluminum extrusions;"
> 2) specified thermal performance requirements must exist; 3) the product's design
> must have been organized around meeting those specified thermal performance
> requirements; 4) the product's production must be organized around meeting the
> specified thermal performance requirements; and 5) the product must have been
> fully, albeit not necessarily individually, tested to comply with the specified thermal
> performance requirements.  We have determined that in accordance with the
> language of the scope, all five of these elements must be present for the [mass filter
> radiator] to be a finished heat sink.

<u>Id.</u>; <u>see also</u> Final Scope Ruling at 21.

Pursuant to a (k)(1) analysis, Commerce considers the descriptions of the merchandise

contained in the petition, the initial investigation, and the determinations of Commerce and the

Commission, including prior scope determinations, when analyzing whether a particular product

is included within the scope of an Order.  19 C.F.R. § 351.225(k)(1).  Only when a (k)(1)

analysis is not dispositive will Commerce "further consider: (i) The physical characteristics of

the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the

product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the

product is advertised and displayed."  Id. § 351.225(k)(2).

        In its Remand Results, Commerce concluded that Agilent did not provide evidence of any

specified thermal performance requirements, particularly related to the design, production, and

testing of its products to meet the specified thermal performance requirements.  See Remand

Results 42–43.  Commerce determined that "dimensional tolerances, regardless of precision, and

regardless of documentation, even those established pursuant to enhancing thermal performance,

are not 'specified thermal performance requirements,' and do not turn . . . [products] into

finished heat sinks for purposes of the scope exclusion at issue."  Id. at 25.  The Department

noted that the use of computer controlled milling machine processing to produce a product also

does not make it a finished heat sink.  Id. at 24–25.  Commerce disregarded much of the

evidence submitted by Agilent regarding the existence of specified thermal performance

requirements.  Id. at 25–35.  Based on this perceived lack of evidence, Commerce concluded that

Agilent's mass filter radiator did not meet the finished heat sink exclusion requirements and was

included in the scope of the Orders.  Id. at 32–37.

        Agilent argues that its mass filter radiator is designed, produced, and tested around a

specified 200 degrees Celsius thermal performance requirement that must be met in order to

absorb a specific amount of heat and to function properly as a finished heat sink.  See Pl.'s

Comments 15–28; see also Oral Argument at 19:56–20:01, 21:26–21:40, 22:08–22:26, 40:27–

40:46, 1:26:31–1:26:55, 1:29:00–1:29:11.  Agilent asserts that its product was developed decades

ago, and that the specified thermal performance requirements remain the same today as when the

product was developed originally.  See Pl.'s Comments 16–17, 23.  Agilent states that the

quadrupole temperature must be 200 degrees Celsius for the thermal absorption and heat transfer

properties of the mass filter radiator to function properly as designed.  See id. at 22–23.  Plaintiff

explained that it uses specific dimensional tolerances in order to achieve the required thermal

absorption of its mass filter radiator.  See id. at 19–20.  Agilent contends that it provided

documents to support its position.  See id. at 31.  Commerce largely ignored Agilent's arguments

and evidence regarding the specified thermal performance requirements of its mass filter

radiator.

        For a (k)(1) determination "to be dispositive, the permissible sources examined by

Commerce must be controlling of the scope inquiry in the sense that they *definitely answer* the

scope question."  OTR Wheel Eng'g, 36 CIT __, __, 853 F. Supp. 2d at 1287–88 (quoting Sango

Int'l, 484 F.3d at 1379).  The exclusionary provision of the Orders does not unambiguously

define "the design and production of which are organized around meeting certain specified

thermal performance requirements," Antidumping Duty Order, 76 Fed. Reg. at 30,651;

Countervailing Duty Order, 76 Fed. Reg. at 30,654.  Commerce conducted a (k)(1) analysis, but

discounted most of Plaintiff's evidence regarding specified thermal performance requirements

and related physical design properties of the mass filter radiator.  Commerce did not reach the 19

C.F.R. § 351.225(k)(2) factors.

        Both parties discuss at length the meaning of the exclusion term "specified thermal

performance requirements."  The Parties differ in their understanding of how the thermal

performance requirements may be met, and it is unclear how the industry views "specified

thermal performance requirements."  Commerce concludes merely that "dimensional tolerances,

regardless of precision, and regardless of documentation, even those established pursuant to

enhancing thermal performance, are not 'specified thermal performance requirements,' and do

not turn . . . [products] into finished heat sinks for purposes of the scope exclusion at issue."

Remand Results 25.

Commerce relies heavily on the prior Final ECCO Light Bars Scope Ruling for support

that "dimensional or other physical tolerances" are not specified thermal performance

requirements "even if such physical tolerances are specifically identified, are precise, and are

established explicitly to enhance thermal performance."  Id. at 24 (citing Final ECCO Light Bars

Scope Ruling at 17–21, PD 35, bar code 3523146-02 (Nov. 24, 2014) ("ECCO")).  Commerce's

reliance on ECCO is misplaced.  In ECCO, Commerce found that "ECCO fail[ed] to demonstrate

how these identified specifications translate into ECCO's product meeting specified thermal

performance requirements."  Id.  The key element is apparently the need for a "translation" or

explanation of how the physical design meets specified thermal performance requirements.  See

id.  ECCO supports an analysis of specific facts to determine whether physical design

requirements can establish the existence of specified thermal performance requirements.  A

company must provide information explaining how the physical elements lead to specified

thermal performance requirements—a "translation"—something that ECCO failed to do, but the

possibility is not precluded.  See id. at 19–24.

The court concludes that Commerce was unreasonable when it discounted Agilent's

evidence of a target quadrupole temperature of 200 degrees Celsius for the mass filter radiator to

pass user-selected tests, and evidence of dimensional or other physical tolerances that were

designed to meet specified thermal performance requirements.  Commerce's determination lacks

substantial evidence that Agilent did not meet the specified thermal performance requirement of

the finished heat sink exclusion.  The sources used by Commerce, including the Department's

reliance on the prior ECCO scope ruling, do not definitively answer the question of whether

Agilent's mass filter radiator is excluded from the scope of the Orders.  It seems quite unlikely

that Commerce can confine itself to a limited 19 C.F.R. § 351.225(k)(1) analysis here and reach

a supported conclusion for the question of whether Agilent's products are designed and produced

around meeting specified thermal performance requirements.  Numerous questions remain.  For

example: What are specified thermal performance requirements?  How does the industry view

products that are designed and produced around meeting specified thermal performance

requirements?  What are the expectations of the ultimate purchasers?  What is the ultimate use of

the mass filter radiator?  These are the types of questions that would appear to require a more

complete (k)(2) analysis.  Commerce should revisit its analysis and provide other substantial

evidence supporting a definitive answer, or it should proceed with a full inquiry pursuant to 19

C.F.R. § 351.225(k)(2).

## CONCLUSION

The court remands the matter to Commerce for further evaluation pursuant to 19

C.F.R. § 351.225(k).  For the reasons set forth above, and in accordance with the foregoing, it is

hereby

**ORDERED** that Commerce's <u>Remand Results</u> regarding Agilent's mass filter radiator are remanded for Commerce to conduct an additional evaluation pursuant to 19 C.F.R. § 351.225(k); and it is further

**ORDERED** that Commerce shall file its second remand redetermination on or before December 7, 2018; and it is further

**ORDERED** that Commerce shall file the administrative record on the second remand redetermination on or before December 21, 2018; and it is further

**ORDERED** that the Parties shall file any comments on the second remand determination on or before January 7, 2019; and it is further

**ORDERED** that the Parties shall file any replies to the comments on or before February 6, 2019; and it is further

**ORDERED** that the joint appendix shall be filed on or before February 13, 2019.


                                                      /s/ Jennifer Choe-Groves
                                                     Jennifer Choe-Groves, Judge

Dated:    October 1, 2018
              New York, New York